UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JAMES BOLAND, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 13-739 (RC) |
| | : | | |
| v. | : | Re Document No.: | 17 |
| | : | | |
| WASCO, INC., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS

## I. INTRODUCTION

When a pension fund determines that an employer has withdrawn from a multiemployer pension plan covered by the Employee Retirement Income Security Act of 1974 ("ERISA") and notifies the employer accordingly, the employer is obligated to make withdrawal liability payments to the fund. Even when withdrawal liability is disputed, the employer must make interim payments under a "pay now, dispute later" rule. In this action, a pension fund's trustees ("Trustees") seek to recover interim payments from two employers. Before this Court now is the Trustees' motion for judgment on the pleadings. Having reviewed the parties' filings and the relevant authorities, this Court shall grant the Trustees' motion.

## II. BACKGROUND

Defendants Wasco, Inc., and Lovell's Masonry, Inc. (collectively "WASCO"), are building and construction companies that employ members of the Bricklayers & Trowel Trades International Union. *See* Answer & Countercl. ¶ 6, ECF No. 5. The Union and WASCO entered into collective bargaining agreements requiring WASCO to make pension contributions to the

Bricklayers & Trowel Trades International Pension Fund ("IPF"). *See id.* ¶¶ 7, 8. The IPF is a "multiemployer plan" governed by ERISA, as amended by the Multiemployer Pension Plan Amendments Act ("MPPAA"). *See* Compl. ¶ 3, ECF No. 1 (citing 29 U.S.C. § 1002(3), (37)).[1]

Congress enacted the MPPAA to ensure the financial integrity of multiemployer pension funds, whose solvency can be jeopardized when employers withdraw from those plans. *See Joyce v. Clyde Sandoz Masonry*, 871 F.2d 1119, 1120 (D.C. Cir. 1989). The MPPAA provides that when an employer withdraws from a multiemployer plan,[2] the plan sponsor is authorized to calculate and collect "withdrawal liability"—the employer's share of the plan's unfunded vested benefits. 29 U.S.C. §§ 1381(a), 1382, 1399(b). If a dispute arises over the amount or schedule of payments that the parties cannot resolve themselves, they must proceed to arbitration. *See id.* §§ 1399(b)(2), 1401(a). Under the MPPAA's "pay now, dispute later" procedure, interim withdrawal liability payments "shall be payable" according to the plan sponsor's schedule "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." *Id.* § 1399(c)(2); *see also Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 196–97 (1997). These interim payments "shall be made" until a final arbitral decision provides otherwise, 29 U.S.C. § 1401(d), and employers can recoup any overpayments with interest, 29 C.F.R. § 4219.31(d).

---

[1] Under the MPPAA, multiemployer plans are implemented through one or more collective bargaining agreements, which specify the amounts that employers must contribute on behalf of their employees to trustee-administered funds. *See The Wash. Star Co. v. Int'l Typographical Union Negotiated Pension Plan*, 729 F.2d 1502, 1504 (D.C. Cir. 1984).

[2] A building and construction industry employer "withdraws" from a pension plan when it "ceases to have an obligation to contribute under the plan," and either "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required, or (ii) resumes such work within 5 years after the date on which the obligation to contribute under the plan ceases . . . ." 29 U.S.C. § 1383(b)(2).

2

In December 2011, the IPF determined that WASCO had withdrawn from the fund and notified WASCO of its withdrawal liability under the MPPAA. *See* Answer & Countercl. ¶ 9. After making the first twelve monthly interim payments, WASCO ceased paying. The IPF made further demands upon WASCO to no avail. *See id.* ¶¶ 12–14.

On behalf of the IPF, the Trustees filed the instant action against WASCO, seeking outstanding interim payments, interest, liquidated damages, attorney's fees, and costs. *See* Compl. 5–6. WASCO admitted nearly all of the Trustees' factual allegations but claimed that WASCO had no legal obligation to make interim payments "in this case," during the pendency of arbitration. *See* Answer & Countercl. ¶¶ 15, 16.[3] WASCO raised three defenses: (1) that the Trustees' demand for "inflated" interim payments violated the Labor Management Relations Act ("LMRA"), *id.* ¶¶ 20–21, (2) that, given the LMRA violation, the Trustees have unclean hands, *id.* ¶ 22–23, and (3) that mandating the interim payments would cause WASCO "irreparable injury" due to its "precarious financial position," *id.* ¶ 24. WASCO also asserted three counterclaims, but this Court dismissed those counterclaims on the Trustees' motion. *See* Mem. Op. Granting Pls.' Mot. Dismiss Countercls., ECF No. 14.[4]

The Trustees now move for judgment on the pleadings, claiming that WASCO has admitted all relevant facts, and that this Court's order dismissing the counterclaims forecloses WASCO's LMRA and unclean hands defenses. Mem. Supp. Pls.' Mot. J. Pleadings 2–6, ECF No. 17-1. The Trustees further contend that WASCO's "irreparable injury" defense would

---

[3] The Trustees' complaint asserts that "arbitration has not yet been initiated," Compl. ¶ 15, but the defendants "deny the allegation that they have not yet initiated arbitration," Answer & Countercl. ¶ 15. In reviewing the Trustees' motion for judgment on the pleadings, this Court is bound to accept the truth of WASCO's factual allegation. *See Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014).

[4] WASCO had claimed that by demanding and collecting payments not authorized under the collective bargaining agreement, the Trustees violated ERISA, the LMRA, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Answer & Countercl. ¶¶ 39–50.

contravene the text and purpose of the MPPAA and this Court's precedents. *Id.* at 6–10. In response, WASCO does not press its LMRA and unclean hands defenses, but maintains its request that this Court—sitting as a "court of equity"—reject the Trustees' demand for interim payments in order to prevent irreparable injury. Defs.' Resp. Pls.' Mot. J. Pleadings 5, ECF No. 18.[5]

### III. ANALYSIS

#### A. Legal Standard

A party moving for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure must demonstrate that no material fact is in dispute and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 12(c); *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n.11 (D.C. Cir.1987), *overruled on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). The court must accept the non-movant's allegations as true, and draw all reasonable inferences in the non-movant's favor. *See Mpoy v. Rhee*, 758 F.3d 285, 287 (D.C. Cir. 2014); *Haynesworth*, 820 F.2d at 1249 n.11.

#### B. Equitable "Irreparable Injury" Exception

WASCO asks this Court to exercise its equitable power to suspend WASCO's obligation under the MPPAA to make interim payments, 29 U.S.C. § 1399(c)(2), on the grounds that it

---

[5] In claiming that only "one issue" remains, WASCO effectively abandons the first two defenses in its Answer—that the Trustees' demand for interim payments violated the LMRA and that the Trustees have unclean hands given the alleged LMRA violation. Defs.' Resp. Pls.' Mot. J. Pleadings 2; *see also Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). In any event, this Court finds that those two defenses are foreclosed by its order dismissing WASCO's counterclaims. *See* Mem. Op. Granting Pls.' Mot. Dismiss Countercls., 16–18 (concluding that WASCO failed to state LMRA claim); *id.* at 13–16 (concluding that WASCO's claims alleging inflation of withdrawal liability are for the arbitrator, not this Court, to resolve).

4

would suffer irreparable injury otherwise.[6] The Trustees also request an equitable remedy, in the form of an order compelling WASCO to make outstanding interim payments. *See* Compl. 6.[7] This Court concludes that the plain text of the MPPAA forecloses an equitable "irreparable injury" exception and that the Trustees are therefore entitled to interim payments.

Although this Court generally has discretion in granting equitable relief, the Supreme Court has cautioned that equitable discretion must not frustrate Congress's ends. In *Albemarle Paper Co. v. Moody*, the district court found that *de facto* segregation in the plaintiffs' workplace had deprived them of opportunities to advance into more skilled, higher-paying positions, in violation of Title VII of the Civil Rights Act of 1964. 422 U.S. 405, 409 (1975). Nonetheless, the district court declined to award the equitable remedy of back pay, in part because there was "no evidence of bad faith." *Id.* at 410. In remanding to the district court, the Supreme Court held that lack of "bad faith" was not a "sufficient reason" for denying back pay. *Id.* at 422.[8] The Court reasoned that although equity "eschews mechanical rules" and "depends on flexibility,"

---

[6] *See* Defs.' Resp. Pls.' Mot. J. Pleadings 5 ("Unless a court of equity intervenes, there is no check on the fund's exercise of raw power."); *see also* Answer & Countercl. ¶ 55 (seeking "other and further relief as [this Court] deems just, proper, and equitable"). However, WASCO does not expressly seek an injunction. *Cf. Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 745 (6th Cir. 2013) ("[T]he district court issued an injunction enjoining the Fund from seeking interim payments from [the employer].").

[7] In this Circuit, an order compelling an employer to make overdue interim withdrawal liability payments operates as an injunction, *see I.A.M. Nat'l Pension Fund Benefit Plan A v. Cooper Indus., Inc.*, 789 F.2d 21, 23–24 (D.C. Cir. 1986), and an injunction is "a remedy available only from equity," *Cory v. White*, 457 U.S. 85, 91 (1982). *But see Trustees of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transport, Inc.*, 935 F.2d 114, 118 (7th Cir. 1991) (explaining that because "final orders to make interim payments under § 1399(c)(2) are money judgments" rather than equitable remedies, a previous panel's claim that courts have some "residuum of discretion" is "call[ed] . . . into question").

[8] The district court also based its denial of back pay on a separate finding that the employees first requested back pay five years into the litigation, such that the employer was "prejudiced." The Supreme Court acknowledged that prejudice could be a valid reason for denying back pay, but remanded to allow the district court to consider its back pay determination in full. *See Albemarle Paper*, 422 U.S. at 423–25 & n.20.

where "transcendant legislative purposes" are at stake, "what is required is the principled application of standards consistent with those purposes . . . ." *Id.* at 417 (citations omitted). To condition a back pay award on a showing of bad faith would "read the 'make whole' purpose right out of Title VII," which targeted the "consequences of employment practices, not simply the motivation." *Id.* at 422 (citations omitted).

Similarly, this Court concludes that the MPPAA's "transcendant legislative purposes" foreclose an equitable irreparable injury exception to the interim payment obligation. *Id.* at 417. The MPPAA mandates that interim withdrawal liability payments "shall be payable . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). In even clearer terms, the statute elsewhere provides that these interim payments "shall be made" until an arbitrator orders otherwise. *Id.* § 1401(d).[9] Even WASCO concedes that under the statute, "there is ordinarily an obligation" to make interim payments. *See* Answer & Countercl. ¶ 16.

By requiring employers to make interim payments, Congress sought to "alleviate the risk that during the course of arbitration, an employer will become insolvent, and [that] the fund will not be able to collect in the event of a favorable award." *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 742 (6th Cir. 2013).[10] By contrast, pension funds are "solvent, diversified, regulated institutions" that will generally be able to repay interim

---

[9] One judge has found ambiguity in § 1399(c)(2)'s phrase "shall be payable," noting that this phrase is "much more open-ended than 'shall be paid.'" *Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 142 (3d Cir. 1997) (Becker, J., dissenting). However, this analysis overlooks § 1401(d)'s mandate that the interim payments "*shall be made* by an employer . . . until the arbitrator issues a final decision . . . ." 29 U.S.C. § 1401(d).

[10] *See Pantry Pride, Inc. v. Retail Clerks Tri-State Pension Fund*, 747 F.2d 169, 171 (3d Cir. 1984) ("Congress believed that it was important to insure that the flow of employer withdrawal liability payments was not delayed by an employer disputing liability." (citations omitted)).

6

payments if a later arbitral decision so orders. *Trustees of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent. Transport, Inc.*, 935 F.2d 114, 118–19 (7th Cir. 1991). Weighing the needs of employers and pension funds, Congress struck a balance that this Court declines to alter, at least on the facts of this case.

WASCO submits that Congress could not have intended employers to be forced into bankruptcy by frivolous demands for interim payments or by lengthy arbitral proceedings. Defs.' Resp. Pls.' Mot. J. Pleadings 5. This Court disagrees with this characterization of the MPPAA's design. Frivolous claims likely would not survive long in arbitration. In closer cases, arbitration might be more burdensome, but Congress determined that regardless of potential costs to employers, arbitration would serve as the initial forum for withdrawal liability disputes. *See* 29 U.S.C. § 1401(d). This Court "hesitate[s] to use an 'equitable' standard that causes the MPPAA to achieve the opposite of Congress'[s] aim." *Cent. Transport*, 935 F.2d at 119.[11]

Moreover, recognizing an equitable "irreparable harm" exception would run afoul of the D.C. Circuit's reasoning in *I.A.M. National Pension Fund Benefit Plan A v. Cooper Industries, Inc.*, 789 F.2d 21, 23–24 (D.C. Cir. 1986). In that case, the district court ordered an employer to make an overdue interim withdrawal liability payment, but indicated that it would determine whether the payment was correctly assessed in a subsequent final order. The employer appealed only from the initial order, and the D.C. Circuit held that the order was not appealable. *Id.* at 25. The court first concluded that the district court's order mandating interim payments was an interlocutory order granting injunctive relief. *Id.* at 23–24. But for such an order to be

---

[11] Both the Trustees and WASCO invoke Seventh Circuit case law, but the law in that circuit seems to be less settled. In *Central Transport*, a Seventh Circuit panel expressed doubts about a previous panel's emphasis on judicial discretion in resolving claims for interim payments, and concluded instead that "judges have no general equitable power to excuse interim payments." *Cent. Transport*, 935 F.2d at 119; *see also id.* at 118–19 (critiquing reasoning of *Robbins v. McNicholas Transp. Co.*, 819 F.2d 682 (7th Cir. 1987)).

7

appealable under 28 U.S.C. § 1292(a)(1),[12] the appellant must demonstrate that the order "might cause irreparable harm." *Id.* at 24. Using broad language, the court concluded that because Congress "showed no . . . solicitude for the cash flow problems of employers" in enacting the MPPAA, "*no such* [irreparable] *harm* flows from an order requiring [interim withdrawal liability] payments." *Id.* at 25 (emphasis added). By contrast, an order *declining* to require interim payments "is appealable because irreparable harm will result." *Id.* Because the D.C. Circuit's discussion of irreparable harm was central to its holding in *I.A.M.* that the district court's order was not appealable, this Court is persuaded that an equitable "irreparable injury" exception is unavailable to WASCO.[13]

Alternatively, even if the MPPAA were to permit discretionary suspension of interim payments to prevent irreparable injury, this Court would not exercise such discretion here. The Second Circuit is the only circuit permitting a finding of "irreparable injury," standing alone, to

---

[12] 28 U.S.C. § 1292(a)(1) allows the courts of appeals to hear appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions . . . ."

[13] Citing this language, two judges of this Court have squarely rejected irreparable injury defenses. *See Connors v. Brady-Cline Coal Co.*, 668 F. Supp. 5, 8–9 (D.D.C. 1987) (Hogan, J.); *Joyce v. Ace Constr. Co., Inc.*, 1988 WL 105000, at *2 (D.D.C. Sept. 20, 1988) (Richey, J.) (unpublished). These decisions, however, are not binding precedent. *See Camreta v. Greene*, 131 S. Ct. 2020, 2033 n.7 (2011).

The D.C. Circuit in *I.A.M.* did not venture as far as the Sixth Circuit's more recent conclusion that the MPPAA "*divest[s]* courts of their equity powers" to forestall interim payments. *Findlay Truck Line*, 726 F.3d at 753 (emphasis added); *see also Cent. Transport*, 935 F.2d at 119 ("[J]udges have no general equitable power to excuse interim payments"). The Sixth Circuit relied on the principle that "when district courts are properly acting as courts of equity, they have discretion *unless a statute clearly provides otherwise*." *United States v. Oakland Cannibis Buyers' Co-op.*, 532 U.S. 483, 496 (2001) (emphasis added). This Court need not decide the broader question of whether the MPPAA's interim payment provisions are clear enough to "divest" it of all equitable powers—*i.e.*, to foreclose *any* equitable discretion. *Findlay Truck Line*, 726 F.3d at 753. It suffices that in *I.A.M.*, the D.C. Circuit determined that no irreparable harm would result from an order requiring interim payments. Thus, even assuming that this Court could excuse WASCO's obligation on other equitable grounds, the language in *I.A.M.* suggests that it would be inappropriate for this Court to do so on grounds of irreparable harm.

excuse an employer from interim payments. *See T.I.M.E.-DC, Inc. v. N.Y. State Teamsters Conference Pension & Ret. Fund*, 580 F. Supp. 621 (N.D.N.Y. 1984), *aff'd*, 735 F.2d 60 (2d Cir. 1984) (per curiam). In *T.I.M.E.-DC*, the district court, whose reasoning was summarily affirmed on appeal, relied on evidence that the employer lost equity, customers, and employees, and ultimately concluded that the employer's "operations would not survive the [pension fund's] pursuit of withdrawal liability." *Id.* at 631. The court concluded that the "specter of business failure" was "a distinct likelihood" and, "on the facts of this case," granted a preliminary injunction barring the fund from demanding interim payments. *Id.* at 632. Here, by contrast, WASCO has offered nothing but an allegation of its "precarious financial position." Answer & Countercl. ¶ 24. Such a vague allegation, even assumed to be true, does not support an inference of any non-speculative, imminent, or severe harm sufficient to constitute irreparable injury in this context. *Cf. Giroux Bros. Transp., Inc. v. New England Teamsters & Trucking Indus. Pension Fund*, 73 F.3d 1, 5 (1st Cir. 1996) (explaining that if equitable exception existed, it "would require no less than the threat of imminent insolvency" (internal quotation marks and citation omitted)); *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 120 (4th Cir. 1991) (surveying cases and concluding that "burden of qualifying for this [irreparable injury] exception . . . is extremely high").[14]

Nor could WASCO seek refuge in the Fifth Circuit's approach, even if this Circuit were to adopt it. *See Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. MAR-LEN, Inc.*, 30

---

[14] WASCO avers that it is "prepared to prove" irreparable injury "if allowed to present evidence." Defs.' Resp. Pls.' Mot. J. Pleadings 6. However, in ruling on a motion for judgment on the pleadings, this Court is limited to considering the parties' pleadings. *Cf. McKinney v. Dole*, 765 F.2d 1129, 1144 (D.C. Cir. 1985) ("[I]f the trial judge looks beyond the pleadings, a 12(b)(6) motion to dismiss is to be treated as a motion for summary judgment."). And in any event, WASCO has not proffered any evidence in support of its opposition to the Trustees' motion.

F.3d 621 (5th Cir. 1994). In *MAR-LEN*, the Fifth Circuit panel articulated a two-step inquiry: If the court finds that a demand for interim payments is "frivolous" or "not colorable," then it can exercise "a narrow measure of discretion to excuse payments . . . ." *Id.* at 626.[15] Here, however, WASCO has not alleged that the Trustees' demand is "frivolous" or "not colorable." To the contrary, WASCO admits that the IPF determined a withdrawal occurred and that it notified WASCO as required by the MPPAA. *See* Answer & Countercl. ¶¶ 9–11.[16] WASCO even appears to concede that it owes some amount of withdrawal liability; it alleges only that the IPF's "withdrawal liability calculations were *inflated*" by certain amounts. *See* Answer & Countercl. ¶ 38 (emphasis added).[17] To the extent that WASCO contests a portion of its calculated withdrawal liability, this dispute ultimately concerns the "amount of" such liability. 29 U.S.C. § 1399(c)(2). This question is for the arbitrator to decide; in the meantime, interim withdrawal liability payments "shall be made" by WASCO. *Id.* § 1401(d); *see also* Mem. Op. Granting Pls.' Mot. Dismiss Countercl. 13–16.

## IV. CONCLUSION

For the foregoing reasons, the Trustees' motion for judgment on the pleadings is GRANTED. An order consistent with this Memorandum Opinion will be separately issued,

---

[15] This Court shares the Sixth Circuit's view that assessing whether claims are "frivolous" runs the risk of courts' "encroach[ing] upon the arbitrator's authority under the MPPAA" of deciding the merits of the withdrawal liability dispute. *Findlay Truck Line*, 726 F.3d at 751 n.6.

[16] Additionally, the fact that WASCO made the interim payments for a year appears inconsistent with a belief that the Trustees' claim is frivolous. *See* Answer & Countercl. ¶¶ 12–14.

[17] *See also* Defs.' Resp. Pls.' Mot. J. Pleadings 6 ("[I]t is plain that *a portion of the assessment* is frivolous and will not be enforced by the arbitrator." (emphasis added)); *id.* at 7 (claiming that "[n]ot all of the fund's assessment need be frivolous" for this Court to grant relief under the Fifth Circuit's formulation of the irreparable harm exception).

directing the Trustees to file with this Court within thirty (30) days an updated statement of all monies owed by WASCO and of any relief it otherwise seeks, and directing WASCO to respond within thirty (30) days thereafter. This Court will base its subsequent final order on these additional filings.

Dated: October 17, 2014                                            RUDOLPH CONTRERAS
                                                                                        United States District Judge